No. 36,455

LEWIS S. BECK, *Appellant,* v. E. H. BATT and JOY BATT, *Appellees.*

(166 P. 2d 690)

Opinion filed March 9, 1946.

*William Keith,* of Wichita, argued the cause for the appellant.

*Harold L. Blake,* of Wichita, argued the cause, and *Earl Blake,* of Wichita, was on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This appeal involves two actions for the recovery of money on account of alleged fraud in the sale of real estate. The two actions were consolidated in the court below. Judgment was for the defendant in each case, the court having sustained a demurrer to the plaintiff's evidence. The plaintiff has appealed.

Each action was brought in the name of Lewis S. Beck, the owner of the properties involved. All the transactions were carried on by W. S. Beck, plaintiff's brother, who it is admitted was plaintiff's agent.

The first cause of action in the amended petition in case No. A-13,012 alleged that plaintiff had been the owner of residence property at 1137 South St. Francis avenue in Wichita, and also other residence property known as 1439 South Santa Fe avenue,

and a vacant lot adjacent to the Santa Fe property; that the agent of plaintiff called on defendant, E. H. Batt, a real estate broker, and requested him to advise Beck as to what value to place upon the properties; that at a later date he again called upon E. H. Batt and Batt advised him that he had a buyer for the properties, whereupon the agent delivered to defendant, E. H. Batt, the abstracts of title and deeds to the properties duly executed with the name of the grantee blank; that a few days after that defendant, E. H. Batt, inserted the names of himself and wife, defendant Joy Batt, as grantees in the deed to the property at 1137 South St. Francis avenue and caused it to be placed of record, and placed a mortgage upon the real estate in the sum of $2,000 even though the property in question was worth about $3,500, and afterward conveyed the legal title to the property by warranty deed to persons named; that at no time had the agent ever agreed to sell the property to defendants for any sum; that after the transactions just described defendants delivered to plaintiff E. H. Batt's certified bank draft for $2,000 payable to the order of plaintiff, which bank draft plaintiff retained and caused to be cashed in mitigation of his damages. Plaintiff prayed for judgment against defendants in the amount of $1,500 actual damages and $1,000 exemplary damages.

For a second cause of action in this case plaintiff made about the same allegations with reference to the property at 1439 South Santa Fe avenue, except he alleged the mortgage placed on the property was $2,900; that defendants caused to be delivered to the plaintiff a check for $3,500, which was cashed, and that the property was worth $5,000. Plaintiff asked in this cause of action $1,500 actual damages and $1,000 exemplary damages.

In the other case plaintiff alleged in his first cause of action that he owned a certain described vacant lot; that on the 15th day of June, 1944, defendant E. H. Batt entered into an oral contract with the agent W. S. Beck for the sale of the lot for a fair and reasonable value thereof; that the agent delivered to defendant E. H. Batt a warranty deed to the property, which was accepted and placed on record, and that defendants refused to pay the purchase price. In this cause of action plaintiff prayed that he be restored to possession and given title to the property.

In the second cause of action plaintiff simply alleged that he had "a legal estate in" and was entitled to possession of the above-mentioned vacant lot.

The defendants' demurrers to the petitions were overruled, whereupon they filed answers to plaintiff's various causes of action in which they alleged that written contracts for the sale of these properties by the agent to the defendants had been entered into and that the various checks were given to plaintiff in full payment of any claims he had against defendants. Attached to these answers were various real estate contracts and warranty deeds, to which reference was made in the answers.

The agent W. S. Beck was the principal witness for the plaintiff. He testified first that he was agent for his brother, the plaintiff, and managed the sale of his real property in Wichita. He told on the witness stand about calling on defendant E. H. Batt for advice as to what was the proper selling price for the properties. This first conversation occurred about December 1, 1943. He returned to the office of defendant Batt on May 15, 1944. He testified on that date he delivered the deeds to the two residence properties, duly executed, but that the name of the grantee and the purchase price were left blank. He also testified rather vaguely about signing other papers. He was handed an exhibit which purported to be a copy of a paper defendants claimed he signed that day. This paper was attached to defendants' answer in the first case and marked Exhibit "D." It was in form a contract between the Becks and one Jones to sell the property known as 1439 South Santa Fe avenue, including four twenty-five-foot lots, for a consideration of $3,500 and provided that Jones had deposited with defendants the sum of $100 as a guarantee of performance. The witness was permitted to deny that the words "including four twenty-five-foot lots" were in that paper when signed. When he was asked whether the words $3,500 appeared on the contract when he signed it the counsel for defendants objected and the court sustained the objection. He denied that he received $100 as the contract provided. The court sustained the objection when he was asked the name of the party of the second part. He was then permitted to state that the names of the defendants did not appear upon this contract. Counsel for the plaintiff offered this exhibit and also one which is a similar contract for the other piece of residence property. After some preliminary questions the court sustained counsel's objection to the introduction of the contract but permitted counsel for the plaintiff to read it to the jury since it was part of the files in the case. When counsel endeavored to ask the witness what names

appeared as parties of the second part in the contract for the sale of the other property when he signed it, the court sustained the objections on the ground, among others, it would be an attempt to change the terms of a written contract. He then testified that on May 17 he asked defendants for his deeds and defendants would not deliver them to him. Thereupon counsel endeavored to ask the witness about some trouble he had with defendants on that occasion. Defendants' objection to that was sustained. He then testified that he had discovered that deeds to both properties with the defendants as grantees had been filed for record and that the property at 1137 South St. Francis avenue had a mortgage of $2,000 and the one at 1439 South Santa Fe avenue was mortgaged for $2,900 just prior to May 17, 1944; that about the first of June he consulted an attorney who he testified was counsel for the defendants; that this attorney told him that as soon as he gave the defendants the deed for the fifty feet of vacant ground, which adjoined one of the residence properties, he would get all his money; that up to that time he had received a check for $1,971 on the property at 1137 South St. Francis avenue; that coupled with this check was a statement setting out that the purchase price had been $2,000 and that incidental costs had amounted to enough so that the balance due him was $1,971. This occurred on May 27. He testified that he accepted the check because he had discovered that a mortgage had been put on the property and he was afraid he would not receive anything unless he took his check. When he got the deed for the vacant lot back from Washington, where he had sent it to be signed, he handed it to defendant E. H. Batt and Batt handed him a check for $3,500 on the purchase of the property at 1439 South Santa Fe avenue, the property the lot adjoined; that he accepted this check and cashed it because he was afraid he would not get anything out of the property unless he did so. After endeavoring to testify about some trouble he had had on account of the defendants having caused him to be arrested, he testified that the fair and reasonable value of the property at 1137 South St. Francis avenue was $3,500 and that the fair and reasonable value of the property at 1439 South Santa Fe avenue was $5,000; that the fair and reasonable value of the vacant lot was $600.

Witness on cross-examination testified to some matters with which we are not particularly interested. Defendants demurred to plaintiff's evidence on the ground that it failed to show any cause

of action in favor of plaintiff and against the defendants, and on the further ground that it showed an accord and satisfaction between the parties which would bar the plaintiff's recovery. This demurrer was sustained. Hence this appeal.

The actions were brought on the theory that the plaintiff had been induced to accept less than the reasonable sale value of the properties by fraud practiced upon plaintiff's agent by defendants. The petitions alleged a cause of action for fraud. However, the evidence did not quite substantiate the allegations of the petitions. The agent of the plaintiff testified that he did sign contracts to sell the properties on May 15 in the office of the defendant E. H. Batt. There is no doubt that shortly after May 15, 1944, plaintiff's agent began to demand from defendants larger amounts than the checks were for.

On May 27, 1944, W. S. Beck again demanded payment for the properties and he received a check for $1,971. It was received by the agent after he had knowledge, according to his own testimony, of all the circumstances upon which he now relies to prove the allegations as to the property at 1137 South St. Francis avenue.

The undisputed evidence is that subsequent to the receipt of the above check W. S. Beck talked with a lawyer representing the defendants and as a result of this talk caused plaintiff at Washington to execute a deed to the vacant lot adjacent to the other residence property at 1439 South Santa Fe avenue and delivered it to defendant E. H. Batt, whereupon Batt handed him a check for $3,500. The agent testified that the securing and delivery of this deed was the result of a talk he had with counsel for defendants.

The transaction with reference to the above deed and check occurred on June 27, 1944. At that time the agent had knowledge of all the facts and circumstances upon which plaintiff relies to prove all his causes of action, both as to the residence properties and the vacant lot. It is undisputed that both these checks were paid at the bank upon July 25, 1944, and credited to the account of the plaintiff and his agent.

We shall lay aside for a moment the questions about the two contracts for the sale of real estate which the agent admits he signed and in which he testified the names of the parties and the amounts were blank at the time of execution. The fact remains that the checks were received and cashed by him after a controversy had arisen and after he knew all that he ever learned about the

various transactions. At the time he received the first check there was also handed him a slip of paper upon which appeared the following:

"May 27, 1944.

"For Lewis S. Beck
  "Property known as 1137 So St
    Francis

| | | |
|---|---:|---:|
| Purchase Price | | 2000 |
| Revenue Stamp for Deed | 2.20 | |
| Abst expense | 8.75 | |
| Cost Court Case—Paid | 18.05 | |
| Check to Balance | 1971.00 | |
| | 2000 | —— 2000" |

In considering a demurrer to the evidence we must indulge all reasonable presumptions and draw all reasonable inferences in favor of the plaintiff. Even then, we are forced to the conclusion that the check for $1,971 was given to the agent in full payment of plaintiff's claim and the circumstances were such as amount to a conclusion that it was accepted in full satisfaction.

The agent did not testify that he even claimed at the time that he accepted the check for anything less than full settlement.

As to the $3,500 check, it was not paid by defendants until the deed for the vacant lot was delivered. Under such circumstances the check was certainly offered in full satisfaction of the debt.

In *Hoop v. Kansas Flour Mills Co.*, 124 Kan. 769, 262 Pac. 544, we held:

"Where a creditor and debtor have a dispute as to the amount of a debt, and the debtor remits checks for the amount of what he contends the debt to be, intending such remittance to be in full payment thereof, and the creditor accepts and knowingly retains the amount thus remitted, the legal consequence is that of an accord and satisfaction, notwithstanding the creditor immediately wrote to the debtor stating that he had deposited the checks, indorsed under protest, and that he expected the debtor to pay him the balance claimed by him to be still due from defendant." (Syl.)

See, also, *Odrowski v. Swift & Co.*, 99 Kan. 163, 162 Pac. 268; *Minor v. Bank*, 112 Kan. 666, 212 Pac. 672; and *Burger v. First Nat'l Bank*, 124 Kan. 23, 257 Pac. 979.

The judgment of the trial court is affirmed.