IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,549

STATE OF KANSAS,
*Appellee*,

v.

WILLIE FLEMING,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 22-3414(3) does not preclude application of the invited-error doctrine.

2.

In a criminal case, the invited-error doctrine may apply when a lawyer submits a pretrial instruction on the elements of an offense that defines the offense more expansively than it is charged by the State.

3.

Raising constitutional issues does not preclude application of the invited-error doctrine.

4.

An appellant's actions in causing an alleged error and the context in which those actions occurred must be carefully reviewed in deciding whether to apply the invited-error doctrine. There is no bright-line rule for its application. And under the circumstances of this case, it applies.

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 22, 2016. Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed August 10, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Shawn E. Minihan*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.:  In this appeal, Willie Fleming questions whether the invited-error doctrine automatically applies when a party requests a jury instruction at trial but claims error on appeal. We consider the rationale underlying the invited-error doctrine, how the doctrine has been applied in Kansas cases involving asserted jury instruction error, whether K.S.A. 22-3414(3) precludes the doctrine's application, and whether the doctrine should be applied here. We hold the invited-error doctrine does not automatically apply every time a party requests an instruction at trial but then, on appeal, claims the district court erred by giving it. Instead, appellate courts must engage in a searching analysis of the facts of the case to determine whether the complaining party truly invited the error. Under the circumstances of this case, we apply the doctrine and do not review the merits of Fleming's claim of jury instruction error.

FACTS AND PROCEDURAL HISTORY

The State charged Fleming with theft, aggravated robbery, and aggravated burglary after an investigation revealed evidence that he and others broke into a residence at night and took property. The noise they made while entering the residence startled Carrington Dean and Quintez Secka, who had been asleep in separate upstairs bedrooms.

2

Dean was a guest who was sleeping over that night, and Secka was a resident. Other residents were not home at the time.

The State presented evidence at trial establishing that Fleming and another man entered the room where Dean had been sleeping. According to this evidence, Fleming hit Dean in the head with a gun and demanded, "Where's the money, where's the weed, where's the safe[?]" When Dean told them he did not know what they were talking about, the men searched the upstairs rooms. Meanwhile, Secka hid from sight. When the men left the house, Dean realized his cell phone and wallet, which had been in the room with him, had been taken. Eventually, the residents of the home realized the burglars had taken property from other rooms.

In charging Fleming with aggravated robbery, the State specified that Fleming had taken a cell phone and a wallet from the person or presence of Dean. In charging theft, the State alleged he took a television, a PlayStation, a laptop computer, and watches. A jury acquitted Fleming of theft but convicted him of aggravated robbery and aggravated burglary.

Fleming appealed to the Court of Appeals, raising three issues: (1) Did the district court err in instructing the jury on aggravated robbery by saying that the State had to prove Fleming "took property from the person or presence of the" victim without specifying that the State had alleged the stolen property was a cell phone and a wallet? (2) Did the district court err in failing to give a jury instruction on sympathy and prejudice? and (3) Did the district court err in increasing his sentence based on his criminal history in violation of his Sixth and Fourteenth Amendment rights?

The Court of Appeals panel held Fleming had not preserved the first issue because he invited the error and he failed to establish the merits of his arguments on the second

and third issues. One member of the panel, Judge Steve Leben, concurred on the first issue. On that issue, the panel disagreed about whether the invited-error doctrine applied. But the panel unanimously agreed, although for different reasons, that Fleming's convictions and sentences should be affirmed. *State v. Fleming*, No. 112,549, 2016 WL 3960159 (Kan. App. 2016) (unpublished opinion).

Fleming sought our review of the Court of Appeals decision. We granted review of the first issue only—the alleged error in instructing on aggravated robbery. This means we will not discuss the Court of Appeals' analysis of the other two issues. See Supreme Court Rule 8.03(h)(1) (2018 Kan. S. Ct. R. 53). Some additional details help explain Fleming's arguments related to the first issue.

On appeal, Fleming challenged the aggravated robbery jury instruction as being broader than the charge set out in the complaint against him. The complaint alleged:

> "COUNT 1- That on or about the 12th day of December, 2012, in the City of Overland Park, County of Johnson and State of Kansas, WILLIE DEMARIO FLEMING, did then and there unlawfully, feloniously and knowingly take *property, to-wit: cell phone, wallet from the person or presence of another, to-wit: Carrington Dean*, by force or by threat of bodily harm to the person of Carrington Dean, while armed with a dangerous weapon, to-wit: handgun, and did inflict bodily harm upon Carrington in the course of such robbery, a severity level 3 person felony, in violation of K.S.A. 21-5420, K.S.A. 21-6804 and K.S.A. 21-6807 (aggravated robbery)." (Emphasis added to highlight the language Fleming relies upon.)

Fleming's counsel proposed an instruction based on the pattern instruction on aggravated robbery. Fleming's proposed instruction changed the charged language of "property: to wit: cell phone, wallet from the person or presence of another" to "property from the presence of Carrington Dean." In full, Fleming's proposed instruction read:

4

"The defendant is charged in Count I with aggravated robbery. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:
"1. The defendant knowingly took *property from the presence of Carrington Dean*.
"2. The taking was by threat of bodily harm to Carrington Dean.
"3. The defendant inflicted bodily harm upon Carrington Dean.
"4. This act occurred on or about the 12th day of December, 2012, in Johnson County Kansas." (Emphasis added to language at issue).

The State proposed similar language, stating it had to prove that Fleming knowingly "took property from the person or presence of Carrington Dean."

Thus, both Fleming's and the State's proposed instructions deviated from the language in the complaint by referring to the taking of "property" without specifying that the State had alleged Fleming took a cell phone and wallet. Fleming's proposed instruction also deviated from the language in the complaint by proposing use of the phrase "from the presence" of Dean rather than the complaint's language of "from the person or presence." The State's proposed instruction stayed true to the complaint on that point, stating "person or presence."

The district court, in preparing a proposed jury instruction, used the language both Fleming and the State had proposed regarding use of "property"—it did not describe the property. The court then used the complaint's language (and the language in the State's proposed instruction) of "person or presence." In full, the sentence in the proposed instruction read: "1. The defendant knowingly took property from the person or presence of Carrington Dean." Fleming concedes his counsel did not object to the proposed

5

instruction or point out its deviation from the complaint. The district court then instructed the jury using that language.

Although Fleming did not complain on appeal about the phrase "person or presence," the Court of Appeals addressed that phrase. It held "taking from the presence"—the language Fleming had proposed—is a broader concept than "taking from a person." Thus, the panel concluded "it is clear the district court's instruction did not expand Fleming's proposed instruction." 2016 WL 3960159, at *3. Fleming did not argue against this conclusion in his petition for review and has thus waived any objection to that wording. See Supreme Court Rule 8.03(a)(4)(C) (2018 Kan. S. Ct. R. 54) ("The court will not consider issues not presented or fairly included in the petition" for review); see also *State v. Perry*, 303 Kan. 1053, 1054, 370 P.3d 754 (2016) (applying rule).

The panel next turned to the specific language Fleming challenged: "took property." Fleming argued to the panel, and to us, that the failure to specify the property—the cell phone and the wallet—allowed the jury to consider all the property taken from other parts of the house where he was not present. Thus, he argued, the instruction impermissibly broadened the charge brought against Fleming. Factually, Fleming's argument loses some, but not all, of its steam because the jury acquitted Fleming on the charge of theft relating to a television, a PlayStation, a laptop computer, and watches. But the State also presented evidence of the theft of keys, a purse, clothing, jewelry, and other items. So, factually, there remains property the jury could have potentially considered.

In response, the State raised several legal questions about the effect of variances, especially relating to factual allegations—an issue it argued this court has never settled. Citing caselaw about variances from other jurisdictions, the State argued no error occurred. But the State also argued Fleming could not raise the issue because he invited

6

the error. Fleming responded, raising four reasons the Court of Appeals should not treat the issue as an invited error.

Ultimately, the panel accepted the State's invited-error argument. It stated: "[A]ny error was invited by Fleming when he proposed an aggravated robbery instruction that required the jury to find that *property* had been taken from the presence of Dean" rather than proposing an instruction that listed the cell phone and the wallet as the property alleged to have been taken. 2016 WL 3960159, at *3.

Judge Leben concurred in the result. He questioned whether application of the invited-error doctrine was mandatory or permissive, suggesting it could be permissive. 2016 WL 3960159, at *5-6. He argued against application of the invited-error doctrine in cases involving jury-instruction error. He first noted that K.S.A. 22-3414(3) already imposes a high burden on a defendant seeking reversal based on a jury instruction error if the defendant did not object to the instruction at trial. In addition, he concluded "the statute seems to imply that a party *may* raise ('assign as error') an instruction-error issue where the instruction given or the failure to give an instruction is 'clearly erroneous,' without respect to any invitation of error." 2016 WL 3960159, at *5. This indicates, he suggests, that the interests of justice may weigh against applying invited error to preclude review when a defendant meets the high burden of establishing clear error. Nevertheless, he determined it was unnecessary to resolve the issue in Fleming's case because, even if the merits were considered, Fleming could not establish clear error. Based on the evidence and argument presented, Judge Leben concluded it was "highly unlikely that the jury was confused by any error that may have been made in the aggravated robbery instruction." 2016 WL 3960159, at *7.

7

Before the Court of Appeals and us, Fleming presents four reasons the invited-error doctrine should not apply. We have reordered those arguments for purpose of our discussion. First, he asks us to determine that the Legislature expressed its intent through K.S.A. 22-3414(3) to allow review of all claims of error related to a jury instruction. Under this statute, he argues, an appellate court must consider all unobjected-to jury instruction claims—even those invited—under the clear-error test imposed by that statute. Second, he argues he could not have invited the error because the instructions were filed before trial and thus before he knew what evidence the State would admit at trial. Third, he argues the Court of Appeals should have, and now this court should, review his claim of error because it involves a denial of constitutional due process and the constitutional right to a jury trial. Finally, he argues we should adopt the test set out in *State v. Hargrove,* 48 Kan. App. 2d 522, 547, 293 P.3d 787 (2013), which requires a court to balance "individual fairness of the person standing as the accused and institutional fairness of the system as an adjudicatory process" before refusing to consider an issue because the accused had invited the action. He argues this approach is much like that proposed by Judge Leben.

Before we discuss these arguments, we need to consider our standard of review. Fleming's core issue relates to an alleged jury instruction error, which appellate courts analyze through a multistep process. *State v. Plummer*, 295 Kan. 156, 160-63, 283 P.3d 202 (2012). Here, the Court of Appeals majority ended its analysis at the first step. In that step, appellate courts focus on reviewability—a concept that includes jurisdiction and "certain prudential rules of preservation." 295 Kan. at 160-61. Traditionally, we have stated that the prudential preservation rule applied by the Court of Appeals—the invited-error doctrine—raises a question of law over which appellate courts exercise unlimited review. *State v. Sasser*, 305 Kan. 1231, 1235, 391 P.3d 698 (2017).

Judge Leben's concurring opinion can be read to suggest the Court of Appeals had discretion to apply the invited-error doctrine. 2016 WL 3960159, at *5 ("[A]ppellate courts *may* apply the invited-error doctrine" and "there are potential reasons we may not want to apply the invited-error doctrine to a claim of jury-instruction error."). If so, it would follow that this court should review the Court of Appeals decision to determine whether it abused its discretion by applying the doctrine. Before us, the parties' briefing did not discuss whether we should continue to apply the traditional de novo review standard. While we asked the attorneys at oral argument whether we should revisit the standard of review, we are reluctant to resolve that question without the benefit of full briefing. And we need not resolve the question here because Fleming presents legal questions about the applicability of the invited-error doctrine and argues the Court of Appeals applied the wrong law. See *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011) (Judicial discretion is abused if "judicial action: (1) is arbitrary, fanciful, or unreasonable, i.e., if no reasonable person would have taken the view adopted by the trial court; (2) based on an error of law, i.e., if the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, i.e., if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based.").

A brief description of the invited-error doctrine and its roots also helps explain our discussion. Essentially, under the doctrine, "[i]t is fundamental that a litigant who invites and leads a trial court into error will not be heard on appeal to complain of that action." *State v. Carter*, 220 Kan. 16, Syl. ¶ 1, 551 P.2d 821 (1976); see *State v. Parks*, 308 Kan. 39, 42-43, 417 P.3d 1070 (2018) ("Generally, a defendant cannot complain on appeal about a claimed error that was invited.") (quoting *Sasser*, 305 Kan. at 1235; *Gilliland v. Kansas Soya Products Co.*, 189 Kan. 446, 451-52, 370 P.2d 78 [1962]; *Mercer v. McPherson*, 70 Kan. 617, 619, 79 P. 118 [1905]). As this suggests, the principle that

9

underlies the doctrine is that a party cannot ask a court to take a specific action and then later ask for the judgment to be reversed because the court complied with the request. *State v. Divine*, 291 Kan. 738, 742, 246 P.3d 692 (2011).

Some cases and commentators suggest the doctrine may have its origins in equitable principles that do not countenance a party manipulating the system to create grounds for appeal. See *United States v. Well*, 519 U.S. 482, 487-89, 117 S. Ct. 921, 137 L. Ed. 2d 107 (1997) (expressing reluctance to consider an issue if doing so would "excuse inattention or reward cunning"). Some jurisdictions ground the doctrine in estoppel. See *People v. Hernandez*, 111 Cal. App. 4th 582, 588, 3 Cal. Rptr. 3d 586 (2003) ("'[T]he doctrine of invited error operates to estop a party from asserting an error when the party's own conduct has induced its commission, and from claiming to have been denied a fair trial by circumstances of the party's own making.' [Citations omitted.]"); *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (applying invited-error doctrine to jury instructions in capital murder case and stating that "[t]he doctrine of invited error is properly thought of, not as a species of waiver, but as estoppel"); see also 5 C.J.S., Appeal & Error § 872 ("An appellant or plaintiff in error is estopped, or will not be permitted, to take advantage of errors for the commission of which he or she is responsible . . . or . . . has invited or induced the trial court to commit."). Others suggest it is grounded in waiver or "the common sense view that where a party invites the trial court to commit error, he cannot later cry foul on appeal." *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009).

This court typically states the invited-error doctrine without labeling it or identifying its doctrinal source. E.g., *Gilliland*, 189 Kan. at 452 ("It is elementary that a litigant cannot take contrary positions, one in which he has sought and procured an order, ruling or judgment in the trial court and another in the supreme court in which he complains of such order, ruling or judgment."). But this court has used both "waiver" and

"estoppel" when referring to the effect of a failure to object to jury instructions. See, e.g., *State v. Moore*, 230 Kan. 495, 498, 639 P.2d 458 (1982) ("Defendant *waived* any right to a more specific instruction on the subject by failure to object and failure to submit a requested instruction in writing.") (Emphasis added.); *Sams v. Commercial Standard Ins. Co.*, 157 Kan. 278, 288, 139 P.2d 859 (1943) (holding that when an instruction is clearly erroneous an "appellant is not *estopped* from complaining of [the instruction] as error by not having objected to it at the time it was given") (Emphasis added.).

We urge parties in future cases to more deeply explore whether Kansas cases follow or should follow concepts of estoppel or waiver because the invited-error doctrine's application may vary depending on which doctrinal route applies. See *Steckline Communications, Inc. v. Journal Broadcast Group of KS, Inc.*, 305 Kan. 761, 769, 388 P.3d 84 (2017) ("In sum, waiver is the intentional surrender of a right, while estoppel is the legal inability to assert a right."). But we need not choose that path today because Fleming has not established relief under the authorities he presents.

With these general concepts in mind, we turn to Fleming's four arguments.

1. *K.S.A. 22-3414(3) does not preclude application of the invited-error doctrine.*

Fleming argues that applying the invited-error doctrine to jury instruction issues runs afoul of K.S.A. 22-3414(3). This argument requires us to interpret the statute and thus presents an issue over which we exercise unlimited review. *In re Marriage of Brown*, 295 Kan. 966, 969, 291 P.3d 55 (2012). Legislative intent governs that review, and "[r]eliance on the plain and unambiguous language of a statute is 'the best and only safe rule for determining the intent of the creators of a written law.'" *State v. Spencer Gifts*, 304 Kan. 755, 761, 374 P.3d 680 (2016) (quoting *Merryfield v. Sullivan*, 301 Kan. 397, 399, 343 P.3d 515 [2015]). We read the statutory language as it appears, without

adding or deleting words, and only "[i]f the language is less than clear or is ambiguous, [do] we move to statutory construction." *Ambrosier v. Brownback*, 304 Kan. 907, 911, 375 P.3d 1007 (2016). If a statute is not ambiguous, we do not examine "legislative history, background considerations that speak to legislative purpose, or canons of statutory construction." *In re Marriage of Brown*, 295 Kan. at 969.

The statute at issue—K.S.A. 22-3414(3)—states:

"No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous."

The statute ignores invited error. But it does make clear that the mere failure to object to an instruction will not constitute a waiver of a claim about a clearly erroneous instruction. See *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012). Even without a specific statutory reference to clear error, Fleming argues the Legislature knows how to state its intent to entirely prevent appellate review when a party fails to object. See K.S.A. 60-404 ("A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection.").

We agree with Fleming up to this point. Indeed, the Legislature knows how to prevent all review of an issue or to grant limited review. From that point forward, however, we disagree with Fleming. Although he urges us to interpret the Legislature's silence to signify an intent to allow review of invited error under the clear error provision, doing so requires us to read words into the statute. But we do not add words to a statute;

instead, we read the statutory language as it appears. *Ambrosier*, 304 Kan. at 911. And we have not read the opening phrase as implying that the invited-error doctrine cannot be applied to jury instructions, as does Judge Leben. *Fleming*, 2016 WL 3960159, at *5.

For example, in keeping with the plain wording of K.S.A. 22-3414(3), we recently rejected the position that a defendant may challenge a clear error in a jury instruction under any circumstances. Rather, "a defendant's ability to allege instructional error, even under K.S.A. 22-3414(3), is not absolute." *State v. Stewart*, 306 Kan. 237, 248, 393 P.3d 1031 (2017). Specifically, we held in *Stewart* that K.S.A. 22-3414(3) does not mean the invited-error doctrine never applies to jury instruction issues. Instead, we held: "The invited error doctrine precludes a challenge to an instruction as clearly erroneous under K.S.A. 22-3414(3) when the district court gives a defendant's requested instruction to the jury. *State v. Jones*, 295 Kan. 804, 811-12, 286 P.3d 562 (2012)." 306 Kan. at 248. We then cited cases in which this court had held the invited-error doctrine applies when a party (1) agrees on the record to the wording in the instruction, (2) requests the instruction, or (3) agrees to or requests a judge's specific response to a jury question. 306 Kan. at 248-49 (citing *Jones*, 295 Kan. at 811-12; *State v. Peppers*, 294 Kan. 377, 393, 276 P.3d 148 [2012]; *State v. Adams*, 292 Kan. 151, 163-65, 254 P.3d 515 [2011]).

Some cases in which this court applied the invited-error doctrine to a jury instruction issue predate the adoption of K.S.A. 22-3414(3) in 1970 and its civil counterpart in 1963. See, e.g., *State v. Graham*, 172 Kan. 627, 629, 242 P.2d 1067 (1952); see also L. 1970, ch. 129, § 22-3414 (Code of Criminal Procedure); L. 1963, ch. 303, § 60-251 (Code of Civil Procedure). For example, in *Graham*, a deliberating jury asked a question before it returned its verdict. The court consulted with the attorneys for both the State and the defendant, who "agreed the question asked had nothing to do with the definite issues of the case and should not be answered." 172 Kan. at 629. On appeal, the defendant sought to "renege on his agreement and [contended] the trial court erred in

failing to give additional instruction respecting the question asked by the jury." 172 Kan. at 629. This court refused to consider the issue, stating: "[T]his court is not disposed to permit this [defendant], or for that matter any other litigant, to predicate error on action to which he has solemnly agreed in the court below." 172 Kan. at 629.

We presume our Legislature knows the law in existence at the time of an enactment. See *In re Tax Appeal of American Restaurant Operations*, 264 Kan. 518, 524, 957 P.2d 473 (1998). Thus, we presume the Legislature knew of this court's holding in *Graham* and other cases that the invited-error doctrine precluded review of jury instruction errors. And we conclude the Legislature would have included invited error in K.S.A. 22-3414(3), along with unobjected-to error, if it had intended to provide appellate review of invited errors in jury instructions.

We also note that we are not alone in this interpretation of provisions much like K.S.A. 22-3414(3). For example, federal rules of criminal and civil procedure similarly require objections to a jury instruction to preserve a claim of error. If a party fails to object to an instruction, an appellate court may consider a plain error in the instruction if it affects substantial rights. Fed. R. Civ. P. 51(b) (applying to civil cases and imposing objection requirement except in situations of plain error affecting substantial rights); Fed. R. Crim. P. 30(d) (applying to criminal cases and imposing objection requirement unless Fed. R. Crim. P. 52[b] applies); Fed. R. Crim. P. 52(b) (allowing review for "plain error that affects substantial rights"). And like K.S.A. 22-3414(3), these federal rules do not address how the invited-error doctrine affects the general rule that appellate courts will not review errors that the complaining party failed to present during trial. See *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 276 (3d Cir. 1998) ("By requiring parties to object with specificity before the jury retires, the rule ensures that the district court is made aware of and given an opportunity to correct any alleged error in the charge before the jury begins its deliberations. When errors are recognized and corrected at that early

stage, the burden on the courts of appeals is diminished, fewer jury verdicts will have to be vacated and fewer cases will need to be tried a second time. [Citations omitted.])".

Even though these rules are silent about invited error, federal appellate courts apply the doctrine to complaints of error when the complaining party proffers the instruction. See, e.g., *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 704, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999) ("As the city itself proposed the essence of the instructions given to the jury, it cannot now contend that the instructions did not provide an accurate statement of the law."); *United States v. Jereb*, 882 F.3d 1325, 1341 (10th Cir. 2018) ("[T]he invited error doctrine applies in cases such as this one, where the defendant requested the jury instruction he later challenges on appeal.").

In both the Kansas and federal cases, the invited-error doctrine has resulted in no review by the appellate courts. In other words, Kansas courts do not review for clear error, nor do federal courts review for plain error when the invited-error doctrine applies. Thus, we reject Fleming's argument that K.S.A. 22-3414(3) precludes applying the invited-error doctrine to claimed errors in a jury instruction.

2. *Pretrial requests may invite error and did so here.*

Fleming also argues a court should not conclude he has invited error when he submitted his proposed jury instructions before trial and thus did not know what evidence the State would present. In two decisions filed after the Court of Appeals' rejection of Fleming's arguments, this court has considered the implications of timing. In other words, when did the party propose the instruction and does that matter when considering if the error was invited?

15

In the earlier of these two cases, *Sasser*, this court held a Court of Appeals panel erred in applying the invited-error doctrine. 305 Kan. at 1233. As in Fleming's case, before trial, the State and the defense proposed largely identical instructions to the one given by the trial court. 305 Kan. at 1234.

Our analysis in *Sasser* began by acknowledging the long-standing general rule that "a defendant cannot complain on appeal about a claimed error that was invited." 305 Kan. at 1235. But we also cautioned: "The defendant's actions in causing the alleged error and the context in which those actions occurred must be carefully reviewed in deciding whether to trigger this doctrine. There is no bright-line rule for its application." 305 Kan. at 1235.

We noted, however, that some cases identified bright-line circumstances where the doctrine did not apply. First, the invited-error doctrine does not apply to structural constitutional error. Second, the mere failure to object to a proposed instruction at the instructions conference does not trigger the doctrine. 305 Kan. at 1235.

We then discussed the specifics of the case. Because the defendant had proposed a jury instruction before trial and had failed to object to it at the instructions conference, the Court of Appeals concluded invited error precluded review of the merits of the defendant's argument. 305 Kan. at 1234. This court disagreed, finding the defendant's "case is more analogous to those in which we have declined to apply the invited error doctrine when counsel merely acceded to—but did not affirmatively request—a factually appropriate instruction." 305 Kan. at 1236.

The reason for this conclusion rested in the nature of the error—an alternative means error—and the circumstances surrounding the drafting of instructions. The court noted the defense had submitted the proposed instruction to the court "before an

16

alternative means error *could* be invited because the trial had not yet occurred. In other words, counsel could not appreciate before trial that the instruction would be overbroad—as measured by the State's evidence—until that evidence was submitted." 305 Kan. at 1238. This court distinguished the case—in which no assessment could be made until the close of evidence—from others "when a lawyer submits a pretrial instruction on the elements of an offense that defines the offense more expansively than it is charged by the State." 305 Kan. at 1238.

The *Sasser* court acknowledged "these issues may present close calls at times, especially because defense counsel has a professional obligation at the instructions conference to match the proposed instructions that are about to be given with the evidence presented at trial." 305 Kan. at 1239. Ultimately, we declined to apply the invited-error doctrine because the defendant proposed the challenged instruction before he could know what the evidence at trial would be, the proposed instruction matched the State's allegations, and "Sasser's failure to object to the jury instructions finalized at the instructions conference more closely resembles acquiescence than invitation." 305 Kan. at 1239.

In contrast, in *State v. Brown*, 306 Kan. 1145, 401 P.3d 611 (2017), we considered the exact situation we had distinguished in *Sasser*, 305 Kan. at 1238—that is, a lawyer submitting a pretrial instruction on the elements of an offense that defines the offense more expansively than it is charged by the State. In *Brown*, the defendant argued the district court erred in the way it instructed the jury about the requisite intent—one of the elements that would be known before trial. We held the invited-error doctrine applied because "Brown proposed the exact intent instruction that the court ultimately gave to the jury and did not object to it." 306 Kan. at 1166.

Fleming's situation is more analogous to *Brown* than *Sasser*. Before trial, Fleming could have assessed the propriety of the instruction he proposed. He complains of error because the language in the instruction differed from the language in the State's complaint. This difference was as obvious before trial as after trial.

Under the circumstances of this case, the fact that Fleming submitted his proposed instruction before trial does not prevent application of the invited-error doctrine.

3. *Constitutional rights test does not advance Fleming's cause.*

Fleming argues the jury instruction's deviation from the State's allegations in the charging document constitutes a due process violation and given the importance of those rights, the invited-error doctrine should not apply. He largely relies on *Hargrove*, 48 Kan. App. 2d 522, which was decided by a different panel of the Court of Appeals than the one who heard Fleming's cause. In *Hargrove*, Judge G. Gordon Atcheson, writing for the panel, questioned: "Should the [invited-error] doctrine extinguish a criminal defendant's appeal of a conviction when that challenge rests on a constitutional defect arising from actions the defendant's lawyer asked the district court to take?" 48 Kan. App. 2d at 524. Judge Atcheson noted that this court had held the invited-error doctrine could be applied in situations involving a criminal defendant's *statutory* right to receive jury instructions on lesser included offenses, but had not yet addressed whether the doctrine extended to cases of *constitutional* error. 48 Kan. App. 2d at 531-32 (citing *State v. Angelo*, 287 Kan. 262, 279-80, 197 P.3d 337 [2008], which addressed alleged error in failing to give lesser included offense instructions when, at trial, the defendant strategically asked the court not to give any lesser included offense instruction).

In essence, the *Hargrove* panel concluded the doctrine should not be applied automatically, but it would preclude consideration of a constitutional issue under the

circumstances presented by the record on appeal in that case. The panel discussed whether different rules should apply depending on how the error was introduced: Counsel's strategic decisions to sacrifice a potential constitutional interest for a tactical advantage should be subjected to the invited-error doctrine, but error introduced through counsel's inadvertence and without strategic design should not. "To hold otherwise would deprive an accused of individual fairness." 48 Kan. App. 2d at 547.

The *Hargrove* panel then examined whether the record revealed if the defense had requested the instruction as part of its strategy. On the record before it, the *Hargrove* panel could not make this determination. 48 Kan. App. 2d at 551-52. The panel adopted a "pragmatic approach" that "defer[s] review of the flawed instruction until the ambiguity of a silent record has been resolved through an appropriate evidentiary hearing." *Hargrove*, 48 Kan. App. 2d at 553. Because that review had not occurred and the defendant had the burden to establish an adequate record, the panel determined the invited-error doctrine precluded direct appellate review. The panel acknowledged the defendant could still have a remedy and opportunity to develop an appropriate record through relief under K.S.A. 60-1507. 48 Kan. App. 2d at 555-58.

Subsequently, this court in *State v. Verser*, 299 Kan. 776, 784-85, 326 P.3d 1046 (2014), applied the invited-error doctrine even though the defendant had alleged a violation of constitutional rights. We first noted:

> "It is true that the invited error doctrine is inapplicable when a constitutional error is structural. See *State v. Hill*, 271 Kan. 929, 934, 26 P.3d 1267 (2001) (structural errors so intrinsically harmful, automatic reversal required without regard to existence of effect on outcome), *abrogated on other grounds by State v. Voyles*, 284 Kan. 239, 252-53, 160 P.3d 794 (2007). But not all constitutional errors qualify for the 'structural' label. In fact, few do. See *United States v. Marcus*, 560 U.S. 258, 263, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010) (short list of structural errors includes total deprivation of counsel,

19

lack of impartial trial judge, denial of right to self-representation at trial, violation of right to public trial, erroneous reasonable doubt instruction)." 299 Kan. at 784.

Thus, under *Verser*, raising constitutional issues does not preclude application of the invited-error doctrine.

We then cited *Hargrove* and noted its distinction between mistakes that arise from inadvertence and those that result from strategic decisions. In *Verser*, the record established that a strategic decision had led to the error. 299 Kan. at 784. Thus, any error was not reversible because "it was not only invited; it was welcomed by the defense." 299 Kan. at 785.

Fleming does not allege structural error. But in contrast to *Verser*, the record here is not as clear; it is more like the silent record in *Hargrove*. On appeal, Fleming argues the error in the proposed instruction might have been inadvertent and suggests because it followed a pattern instruction it must have been. But we simply cannot tell.

As the *Hargrove* panel stated, reading the silent record as Fleming proposes "seems flawed in several respects. First, it imputes meaning to a silent record that cannot be inferred and should not be presumed on any logical basis. Second, it rewards a lawyer for deliberate but stealthy manipulation of the process." 48 Kan. App. 2d at 552-53. In *Hargrove*, the panel "declined to take up the merits" of the jury instruction challenge "in the absence of a developed record." 48 Kan. App. 2d at 553. Thus, even under the authority cited by Fleming he cannot succeed.

The mere fact Fleming raises constitutional issues does not prevent application of the invited-error doctrine.

20

4. *Balancing of interests does not prevent application of the invited-error doctrine here.*

In *Hargrove*, the panel stated: "In reconciling invited error and resulting constitutional defects in jury instructions adversely affecting criminal defendants, we balance competing considerations bound up in fairness—individual fairness for the person standing as the accused and institutional fairness for the system as an adjudicatory process." 48 Kan. App. 2d at 547. Fleming argues the Court of Appeals erred in failing to apply that test and in failing to find its application required the Court of Appeals to reach the merits of his case.

But one panel of the Court of Appeals may disagree with a previous panel of the same court. *Graham v. Herring*, 297 Kan. 847, 861, 305 P.3d 585 (2013). *Hargrove* is, at most, persuasive authority for the *Fleming* panel and for this court. Also, as we have discussed, applying *Hargrove* does not help Fleming. Thus, if the panel had applied *Hargrove*, it would not have reached the merits of Fleming's argument. And before us, Fleming does not explain why the *Hargrove* panel's analysis was incorrect when, as here, a silent record exists to determine whether his counsel acted inadvertently or strategically.

Fleming also argues we should adopt Judge Leben's "interest of justice" test, which he appears to measure by whether a defendant could satisfy the heightened review standard of clear error. In large part, Judge Leben's view is based on a reading of K.S.A. 22-3414(3) that this court has not adopted. See *Stewart*, 306 Kan. at 248-49.

Even so, we agree with Judge Leben's and the *Hargrove* panel's conclusion that the invited-error doctrine should not be applied in every case in which the complaining party had proposed the complained-about jury instruction. Instead, as we said in *Sasser*, 305 Kan. at 1235: "The defendant's actions in causing the alleged error and the context in

21

which those actions occurred must be carefully reviewed in deciding whether to trigger this doctrine. There is no bright-line rule for its application."

We acknowledge the more searching analysis of the facts may deviate from some of our cases that have formalistically applied the doctrine just because the defendant requested the instruction and did not later object at conference or when the court gave it. E.g., *Jones*, 295 Kan. at 812. But we conclude such an analysis is appropriate in this and future cases because it ensures that we limit application of the invited-error doctrine to cases in which the complaining party truly *invites* the error.

Based on our review of the facts here, we determine invited error precludes review of Fleming's alleged instruction error. Defense counsel relied on the PIK Crim. 4th 54.410 to describe the first element of aggravated robbery: "the defendant knowingly took property from the (person) (presence) of *insert name*." The charging document was clear that the State alleged Fleming took only two items when committing aggravated robbery. The document was also clear that other items taken would be at issue in the theft count. Unlike counsel in *Sasser*, Fleming's counsel had notice of the particular facts the State alleged supported its case and that those facts could be of particular significance to different charges brought. See *Sasser*, 305 Kan. at 1238. Yet Fleming's counsel proposed an instruction that used the pattern language rather than proposing a modification limiting the jury's consideration to the specific property alleged here and did not at any later point object or request a modification.

We acknowledge there is a possibility that defense counsel's actions here resulted from inadvertence rather than trial strategy. But Fleming does not argue, nor do we perceive, any potential error was structural. If counsel's error resulted from inadvertence, Fleming may pursue relief through a K.S.A. 60-1507 action. See *Hargrove*, 48 Kan. App. 2d at 554-58.

22

We conclude invited error precludes our review of Fleming's asserted jury instruction error on these facts.

Affirmed.